UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JANET MARIE LOGAN,**

*Plaintiff,*

v.

**ANTONY BLINKEN,** *et al.***,**

*Defendants.*

Civil Action No. 21-2275 (FYP)

## MEMORANDUM OPINION

In June 2020, Plaintiff Janet Marie Logan submitted a visa petition to the United States Citizenship and Immigration Service ("USCIS") for her husband, Michael Owusu Yankson. The visa would allow Yankson, currently a resident of Ghana, to join his wife in the United States. Although the visa petition was approved by USCIS in July 2020, the application process subsequently stalled for over a year, prompting Logan to file this lawsuit against various government officials to compel the issuance of the visa. She alleges that the delayed processing of her husband's visa application constitutes a violation of the Administrative Procedure Act ("APA"), *see* 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, *see* 28 U.S.C. § 1361. Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and Plaintiff moves for summary judgment under Rule 56. The Court concludes that Logan is not entitled to the relief that she seeks; and it therefore will grant Defendants' Motion to Dismiss and will deny Plaintiff's Motion for Summary Judgment.

1

## BACKGROUND

Logan filed an I-130 visa petition for her husband, Yankson, with USCIS in June 2020. *See* ECF No. 1 (Petition), ¶ 13; ECF No. 9-1 (Decl. of Janet Logan) ("Logan Decl."), ¶ 4.  In July 2020, USCIS approved the visa petition. *See id.*  USCIS then transferred the case to the State Department's National Visa Center ("NVC"), which processed the paperwork and necessary fees before referring the case for a visa interview at Yankson's in-country consulate — the U.S. Embassy in Ghana.  *See* ECF No. 7 (Defendants' Motion to Dismiss) at 2–3.  But during the pendency of the visa's approval, the global COVID-19 pandemic "significantly disrupted the State Department's ability to interview applicants," and visa services in Ghana were delayed due to the backlog.  *See id.* at 3.  Globally, the pandemic reduced the number of immigrant visa issuances by nearly 75% between January 2020 and January 2021.  *See id.* at 3–4.  Although the U.S. Embassy in Ghana is currently conducting interviews, it is processing cases sequentially by priority date and is still working through the backlog of pandemic cases.  *Id.*

While the visa application was pending, Logan made multiple inquiries about its status, but did not receive any meaningful update on the scheduling of her husband's interview.  *See* Pet., ¶ 15.  She filed suit in this court thirteen months after the initial approval of the visa petition.  *Id.*  She named as Defendants:  Antony Blinken, the Secretary of State; Richard Visek, the Acting Legal Adviser of the State Department; Merrick Garland, the United States Attorney General; Alejandro Mayorkas, the Secretary of Homeland Security; Christopher Wray, the Director of the Federal Bureau of Investigation ("FBI"); Ur Jaddou, the Director of USCIS; Ian Brownlee, the Acting Assistant Secretary of the Bureau of Consular Affairs; and Nicole Chulick, the Deputy Chief of Mission at the U.S. Embassy in Ghana.  *See id.*, ¶¶ 6–11.  Logan seeks to compel the issuance of the visa, alleging that Defendants' delay in processing her visa

application is unreasonable under the APA, *see id.*, ¶¶ 13–18, and a dereliction of duty that requires relief under the Mandamus Act, *see id.*, ¶¶ 29–33. Defendants now move to dismiss, arguing that Logan has named parties who cannot provide the relief requested, and has failed to state a claim upon which relief can be granted. *See* Def. Mot. at 5–8. Logan has filed a motion for summary judgment, asserting that she is entitled to judgment based on the undisputed facts as a matter of law. *See* ECF No. 9 (Plaintiff's Motion for Summary Judgment).

## LEGAL STANDARD

**I.     Subject-Matter Jurisdiction**

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to hear her claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *See Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As a result, "the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *See id.* at 13–14 (cleaned up).

A federal court lacks jurisdiction if the plaintiff does not establish standing. *See Lujan*, 504 U.S. at 561 (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing the [three] elements" of standing (citation omitted)). Indeed, "a showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *See Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560).

The elements relevant to standing are injury in fact, causation (traceability), and redressability. First, the plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (cleaned up). Second, there must be traceable causation from a defendant's alleged action to a plaintiff's injury. *See id.*; *see also Fla. Audubon Soc.*, 94 F.3d at 664 ("Causation may thus be said to focus on whether a particular party is appropriate."). Third, the plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." (footnote omitted)). A plaintiff must establish injury in fact, causation, and redressability separately for each defendant. *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 205 (D.D.C. 2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).

In policing its jurisdictional bounds, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. *See Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44 (D.D.C. 2017). The court, however, need not rely "on the complaint standing alone," as it may also look to undisputed facts in the record or resolve disputed ones. *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.     Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion,

*see id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a Rule 12(b)(6) motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.   Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* At the summary judgment stage, "[t]he nonmovant's evidence 'is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" *See Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020) (quoting *Anderson*, 477 U.S. at 255).

### ANALYSIS

Defendants move to dismiss on several grounds. They assert that because many of the named defendants cannot provide the relief requested, Plaintiff's claims against those defendants

should be dismissed under Rule 12(b)(1) for lack of standing.  *See* Def. Mot. at 5–6.  Defendants also move to dismiss Plaintiff's claims under the APA and Mandamus Act under Rule 12(b)(6).  *See id.* at 6–8.  Plaintiff, meanwhile, moves for summary judgment, arguing that there is no genuine dispute of material fact that Defendants have failed to fulfill their non-discretionary duty to process, investigate, and adjudicate her visa application within a reasonable period of time.  *See* Pl. Mot. at 1. The issues raised by the parties are overlapping, and the Court will address them in turn.

**I.   Standing**

Defendants argue that Logan lacks standing to bring claims against DHS Secretary Alejandro Mayorkas, USCIS Director Ur Jaddou, Attorney General Merrick Garland, and FBI Director Christopher Wray because those four defendants "have no role in adjudicating the request for a visa or they completed their role in the process."  *See* Def. Mot. at 5.  The Court agrees that Plaintiff's claims are not properly brought against those four defendants.

DHS Secretary Mayorkas, USCIS Director Jaddou, Attorney General Garland, and FBI Director Wray lack authority to redress Plaintiff's alleged injury.  USCIS approved Logan's visa petition on July 30, 2020, at which time the visa application was passed to NVC.  *See* Logan Decl., ¶¶ 4–9.  At this stage in the process, the visa application requires an interview with Yankson's in-country consulate, and the authority to adjudicate Logan's visa application rests solely with that consulate — the State Department's Embassy in Ghana.  *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999); *see also Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) ("The Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" (quoting *Saavedra Bruno*,

197 F.3d at 1156)).  Having already approved Logan's visa petition and passed it along to NVC, DHS Secretary Mayorkas and USCIS Director Jaddou have completed their role in the process and have no authority to compel the Ghanaian Embassy to schedule the necessary interview.  As for Attorney General Merrick Garland and FBI Director Christopher Wray, Logan has failed to allege any plausible role the two have played in processing Logan's visa application.[1]  *See* Pet., ¶¶ 8–9.  Plaintiff's claims against these four defendants must therefore be dismissed for lack of standing under Rule 12(b)(1) because Plaintiff fails to show that she can obtain relief from them.  *See Fla. Audubon Soc.*, 94 F.3d at 663–64.

## II.     APA Claim

Logan alleges that Defendants' delay in processing her visa application violates the APA's requirement that agencies conclude matters presented to them "within a reasonable time." *See* Pet., ¶¶ 18–28.  She also alleges, in the alternative, that Defendants have violated the Mandamus Act by failing to perform a clear duty that cannot be compelled through any other adequate remedy.  *See* Pet., ¶¶ 29–33.  Because "[t]he standard for undue delay under the Mandamus Act . . . is identical to the APA standard," the Court treats the two claims as one.  *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)).

---

[1]     Plaintiff argues that her failure to allege a plausible role for some defendants is a result of Defendants' failure to provide sufficient information under Local Civil Rule 7(n).  *See* ECF No. 12-1 (Plaintiff's Corrected Memorandum) at 18.  Local Civil Rule 7(n) requires agencies "to file a certified list of the contents of the administrative record simultaneously with the filing of a dispositive motion," *see* LCvR 7(n)(1), which Plaintiff implies would contain the information she needs to properly bring all Defendants into the case.  *See* ECF No. 13 (Plaintiff's Reply) at ECF pg. 9.  That rule, however, only applies to "cases involving judicial review of administrative agency actions."  *See* LCvR 7(n)(1).  Here, Plaintiff does not seek review of agency action, but instead to compel agency action.  Accordingly, Rule 7(n) does not apply.  *See Dastagir v. Blinken*, 557 F. Supp. 3d. 160, 164 n.5 (D.D.C. 2021) ("[Local Civil Rule 7(n)] does not apply because [plaintiff] 'is challenging the [Government's] inaction on the immigrant visa application.'"); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) ("[I]f an agency fails to act, there is no 'administrative record' for a federal court to review.").

In *Telecommunications Research and Action Center (TRAC) v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984), the D.C. Circuit provided "useful guidance" for assessing claims of unreasonable agency delay, noting the following considerations:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*See id.* at 80 (citations omitted). Courts in this jurisdiction have applied these so-called "*TRAC* factors" in numerous cases involving the delayed processing of visas. *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (applying *TRAC* factors at motion-to-dismiss stage to determine if an employment-based immigrant visa application was unreasonably delayed); *see also Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5–6 (D.D.C. June 10, 2020) (collecting cases). Here, application of the *TRAC* factors leads the Court to conclude that the delay in processing Logan's application is not unreasonable as a matter of law.

1. *TRAC* Factors One and Two

The first two *TRAC* factors — focusing on the reasonableness of the delay and whether Congress has set a timeline for completion of the action in question — favor Defendants. Congress has not set any statutory deadline or timeframe for the processing of visas; "[t]o the contrary, Congress has given agencies wide discretion in the area of immigration processing." *See Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Congress granted the State Department the authority to process visa applications in broad terms, specifically omitting "substantive standards against which the Secretary's determination could be measured." *See Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

In cases like this where there is no "congressionally supplied yardstick, courts typically turn to case law as a guide." *See Sarlak*, 2020 WL 3082018, at *6. While there is no bright-line rule in this realm, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *See id.* (citation omitted) (collecting cases). Indeed, many courts have "declined to find a two-year period to be unreasonable as a matter of law." *See Ghadami v. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases).

Logan does not challenge USCIS's conduct in approving her initial visa petition, but seeks only to compel the State Department to conduct her husband's interview and conclude the visa application process. Thus, the relevant delay is measured from the time when the interview could have been scheduled, i.e., from when USCIS approved Logan's petition and forwarded it to the NVC on July 30, 2020. *See* Logan Decl., ¶ 5; *Alshawy v. USCIS*, No. 1:21-cv-2206, 2022

9

WL 970883, at *6 (D.D.C. Mar. 30, 2022) (holding eighteen-month delay was not unreasonable in light of COVID-19 pandemic); *Khushnood v. USCIS*, No. 1:21-cv-2166, 2022 WL 407152, at *4 (D.D.C. Feb. 10, 2022) (same).  The delay between that last government action and the filing of this suit was approximately thirteen months.[2]

Although the Court recognizes the genuine hardship that the delay in the visa process has caused Logan and her family, the delay has been caused by the ongoing global pandemic.  The COVID-19 pandemic "has significantly disrupted the State Department's ability to interview applicants and issue visas on a worldwide basis."  *See* Def. Mot. at 3.  As courts in this District have recognized, "[i]ssues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess."  *See Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021); *Alshawy*, 2022 WL 970883, at *6 (same); *Khushnood*, 2022 WL 407152, at *4.  Indeed, visa delays greater than thirteen months have been repeatedly found reasonable in light of the pandemic.  *See, e.g.*, *Mahmood v. DHS*, No. 21-cv-1262, 2021 WL 5998385, at *6–8 (D.D.C. Dec. 20, 2021) (twenty-five months); *see also Ghadami*, 2020 WL 1308376, at *8 (same) (collecting cases).

As to the second *TRAC* factor, Logan contends that Congress has in fact contemplated a statutory timeframe for visa applications.  *See* Pl. Mot. at 12; Pl. Reply at ECF pg. 5.  She argues that under the plain language of 8 U.S.C. § 1571(b), *TRAC* factors one and two "tip[] . . . in the Plaintiff's favor if more than 180 days have passed since the filing of an immigration benefit application."  *See* Pl. Reply at ECF pg. 5 (citing *Desai v. USCIS*, No. 20-cv-1005, 2021 WL 1110737, at *6 (D.D.C. March 21, 2021)); *see also* 8 U.S.C. § 1571(b) ("It is the sense of

---

[2]   The Court acknowledges that more time has passed since Plaintiff filed this case.  Logan has now waited more than two years for the State Department to schedule her husband's interview.  But even a two-year delay does not constitute an unreasonable delay under the applicable case law.  *See Ghadami*, 2020 WL 1308376, at *8 (collecting cases where courts have declined to find a two-year delay unreasonable).

10

Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."). Although at least one judge in this district has held that 8 U.S.C. § 1571(b) provides an indication of the speed with which Congress expects visa processing to proceed, *see Desai*, 2021 WL 1110737, at *6, the D.C. Circuit has recognized that "a sense of Congress resolution [like § 1571(b)] is not law." *See Emergency Coal. to Defend Educ. Travel v. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact").

The Court therefore concludes that the language of 8 U.S.C. § 1571(b) "is 'best interpreted as non-binding'. . . [a]nd [that] a contrary holding would ignore the overwhelming caselaw rejecting unreasonable delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571." *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) (quoting *Palakuru*, 521 F. Supp. 3d at 51) (other citation omitted). Accordingly, consideration of that statute does not tilt the first two *TRAC* factors in Plaintiff's favor. Given the complications of the pandemic and the ample precedent holding that thirteen-month delays are reasonable, the Court finds that the first two *TRAC* factors weigh in favor of Defendants.

    2. *TRAC* Factors Three and Five

The third and fifth *TRAC* factors favor Plaintiff. These two factors overlap, as courts consider the effects of delay on both "human health and welfare" and "the interests prejudiced by delay." *See TRAC*, 750 F.2d at 80. Here, Logan alleges that the delay and separation from her husband has caused her tremendous stress and anxiety, as she alone has had to bear the heavy

11

burden of caring for her ailing mother and father, aged 94 and 96, and her two adult sons, who suffer from severe mental health disorders. *See* Logan Decl., ¶¶ 10–11. These stressors have, in addition to their mental toll, caused Logan to experience lethargy, shoulder problems, and body aches. *See id.*, ¶ 12. Additionally, because her husband has been unable to find employment in Ghana, Logan must send money to support him, which impacts her financial stability and quality of life. *See id.*, ¶¶ 15–16.

Such effects on Logan's physical and mental health go far beyond economic damage. The level and type of harm suffered by Logan, which is supported by detailed documentation, "is undeniably significant." *See Ghadami*, 2020 WL 1308376, at *9; *see also Desai*, 2021 WL 1110737, at *7 ("[P]lausible allegations of harm to [the plaintiff's] 'health and welfare' . . . have weighed these factors in a plaintiff's favor"). Although Defendants' delay in processing visas, including Logan's visa, is attributable to the government's efforts to protect the health and safety of consular and diplomatic officials during the COVID-19 pandemic, *see* Def. Mot. at 14–15, the extent and nature of concrete harm to Logan lead this Court to conclude that the third and fifth *TRAC* factors weigh in favor of Plaintiff.

3. *TRAC* Factor Four

The fourth *TRAC* factor requires an assessment of the impact that expediting the delayed action would have on other agency priorities — a consideration that firmly tips the scales toward Defendants. The D.C. Circuit has held that court intervention is unwarranted where "'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations omitted) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Judicial intervention would create just that scenario here. Granting Logan the

relief she requests "would simply 'reorder' a queue of applicants seeking adjudication," *see Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021), during a time of "'competing priorities' for limited resources," *see Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101. Indeed, other applicants in the queue may face even more significant hardships due to the State Department's delays, and there is no net gain in prioritizing Logan at their expense.[3] Accordingly, the fourth *TRAC* factor favors Defendants.

### 4. *TRAC* Factor Six

The last *TRAC* factor does not alter the Court's analysis. Logan does not allege any impropriety in the government's actions beyond the delay itself. *See* Pl. Reply at ECF pg. 8. The D.C. Circuit, however, has instructed that a "court need not find any impropriety" to find a delay to be unreasonable. *See TRAC*, 750 F.2d at 80 (cleaned up). Accordingly, Logan's lack of such allegations "does not count against [her] here." *See Ghadami*, 2020 WL 1308376, at *9.

\* \* \*

Considering all six *TRAC* factors together, the Court concludes that Logan has not stated a claim of unreasonable delay, nor has she shown that she is entitled to summary judgment on such a claim. Even treating all of Logan's allegations as true and drawing all inferences in her favor, the Court cannot find that a delay of thirteen months in scheduling a visa interview for her husband in Ghana is unreasonable, particularly during a global pandemic. Logan's APA and Mandamus Act claims must therefore be dismissed under Rule 12(b)(6). Accordingly, the Court also will deny Plaintiff's Motion for Summary Judgment.

---

[3] Plaintiff argues that there is no evidence of a queue for visa applications and cites *Doe v. Risch*, 398 F. Supp. 3d 647, 658 (N.D. Cal. 2019), and *Solis v. Cissna*, No. 18-cv-83, 2018 WL 3819099 (D.S.C. July 11, 2019), for the proposition that *TRAC* factor four should therefore be weighed in her favor. *See* Pl. Corr. Mem. at 13; Pl. Reply at ECF pg. 6–7. The Court sees no reason to doubt Defendants' factual assertion that the Embassy in Ghana "process[es] all cases according to their priority date." *See* Def. Mot. at 3. And in any event, this Court is not bound by out-of-circuit cases.

13

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and will deny Plaintiff's Motion for Summary Judgment.  A separate Order will issue this day.

                                                  _____
FLORENCE Y. PAN
United States District Judge

Date:    August 29, 2022